## FORT WORTH & DENVER CITY RY. CO. v. HELM.

### No. 12337.

Court of Civil Appeals of Texas. Fort Worth.
May 31, 1930.

Thompson & Barwise, of Fort Worth, and Carrigan, Britain & King and Nat Henderson, all of Wichita Falls, for appellant.

Kay & Akin, of Wichita Falls, for appellee.

**DUNKLIN, J.**

On November 8, 1927, S. G. Helm delivered to the Chicago, Rock Island & Gulf Railway Company, at Benonine, Tex., 98 head of calves, averaging in weight 400 pounds a head, for shipment to Dundee, in Archer county, a station on the Wichita Valley Railway. The calves were shipped in two cars and arrived at their destination during the evening of November 12th, about 96 hours after they were loaded at Benonine. The shipper directed the cattle to be routed to Amarillo; from Amarillo to Wichita Falls, over the Fort Worth & Denver City Railway, a distance of 222 miles; and from Wichita Falls to Dundee over the Wichita Valley Railway, a distance of 27 miles. Contrary to that instruction, the cattle were routed from Amarillo to Sweetwater over the Gulf, Colorado & Santa Fé Railway, a distance of 244 miles; from Sweetwater to Abilene over the Texas & Pacific Railway, a distance of 41 miles; from Abilene to Dundee over the Wichita Valley Railway, a distance of 124 miles. It thus appears that the cattle traveled 160 miles farther over the route they were shipped than they would have traveled had they been routed as the plaintiff directed.

S. G. Helm, the owner of the cattle, instituted this suit against the Fort Worth & Denver City Railway, the Chicago Rock Island & Gulf Railway, and the Wichita Valley Railway to recover damages for the depreciation in the market value of the cattle by reason of the unnecessary delay in the shipment, occurring through the routing of the cattle in violation of his instruction, as above indi-

cated. It was alleged that by reason of such delay the cattle were starved, bruised, and gaunted, in which condition their market value upon their arrival at Dundee was $10 a head less than it would have been had they been shipped over the route selected by the plaintiff.

The case was tried before the court without a jury, and the defendants have prosecuted this appeal from a joint and several judgment rendered against them for the sum of $250, with interest thereon from January 1, 1928, at the rate of 6 per cent. per annum.

An assignment of error is presented to the ruling of the court indicated in a bill of exception, duly approved by the court, and reciting that plaintiff was "permitted to testify as to the reasonable market value of the cattle at Dundee if they had been transported and delivered to him from their point of destination, Benonine, to Dundee, Texas, with reasonable dispatch, diligence, and with ordinary care, which market value the witness gave at $40.00 per head, which evidence was objected to on the ground that the witness had not shown himself qualified to testify as to their value at Dundee because, as defendant contended, the witness had not shown himself familiar with the shipment of cattle over the various lines, and the time required for making such shipments, which said objections were overruled by the court and the evidence was admitted and considered by the court. * * *"

According to the testimony of plaintiff and Garrett, who received the cattle for Helm at Dundee, upon their arrival they were gaunt, drawn, and poor, and in that condition their market value was from $27.50 to $30 per head.

The record shows that Amarillo and Wichita Falls were division points at which the shipment would have been changed from one road to another had it been made as directed.

Plaintiff testified that this was the first shipment he had ever made from Benonine to Amarillo. He further testified that the usual and customary speed on that route was 18 miles an hour, which was the same average speed of trains from Wichita Falls to Amarillo, including all stops. However, on cross-examination, he further testified as follows: "I did not say that the average of all freight trains between here and Amarillo would be 20 miles an hour and make all stops. I said my observation of them. The train that I accompanied between Wichita Falls and Amarillo on my shipment out of Amarillo last fall to Dundee, Texas, it was in less than 20 hours. I do not know the number of hours between Amarillo and Wichita Falls. I don't know the number of hours and the average rate of speed from Amarillo to Wich-

ita Falls. I believe I have observed one train from Amarillo to Wichita Falls, but I could not name the number of the train. Yes, sir, that one is the fastest one I shipped. I have to go further back to remember another one —all the way from Amarillo, I shipped some cattle out of Quanah last fall that made that time or better. I don't know that I can recall one right now between Amarillo and Wichita Falls except the one that I was in last fall. I just know the time between Miami and Dundee. It is 95 miles from Miami to Amarillo. I never in my whole life sent a shipment of cattle from Benonine to Amarillo except this one. I never in my whole life sent a shipment of cattle from Amarillo to Sweetwater."

It thus appears from the plaintiff's own testimony that he did not know the average speed or the average number of hours it would take a train to go from Amarillo to Wichita Falls, and that his testimony along that line was based upon one or two shipments made by him, which would not be sufficient to show the usual and customary time consumed in such shipments. It is to be noted further that there is an absence of any testimony to show the length of time required to make the transfer of the shipment in question from the Rock Island Railway to the Fort Worth & Denver City Railway at Amarillo, or the length of time usually required to make the transfer from the Fort Worth & Denver City Railway to the Wichita Valley Railway at Wichita Falls. Of course those delays were necessarily involved in a determination of what would be the usual and customary time required to make the shipment from Amarillo to Dundee.

Plaintiff further testified: "Ordinarily a freight train that has only two or three cars of stock don't move with anything like the rate of speed that a through or full cattle train will make. It is owing to what train you get on. A local would not move as fast. A full cattle train does not have to make all those stops, and sometimes other freight trains have to stop at different places. * * * It is a fact that calves shrink very heavy for the first twenty-four hours to thirty-six hours, but that might be from fright a little."

Viewing plaintiff's testimony as a whole, all of which we have read and considered, we do not believe he showed himself qualified to testify to the usual and customary time required for such a shipment of cattle from Amarillo to Dundee, and, since the testimony to which the objection was addressed was necessarily based upon the opinion of the witness as to the usual and customary time required to make the trip in controversy, we

494

conclude that the court erred in overruling the objection.

Nor was the error in admitting that testimony rendered harmless by reason of the testimony of the witness T. E. Rhodes, chief train dispatcher of the Fort Worth & Denver City Railway, that "the accepted speed for ordinary freight trains is 12½ miles an hour," since even that testimony apparently does not take into consideration the delays incident to transfers of shipments from one railway to another. Furthermore, as stated in the bill of exception, the testimony of the plaintiff was "considered by the court," which evidently means that it was given effect in reaching the judgment rendered. See G., C. & S. F. Ry. v. Kimble, 49 Tex. Civ. App. 622, 109 S. W. 234; G., C. & S. F. Ry. v. Irvine (Tex. Civ. App.) 73 S. W. 540; K. C., M. & O. Ry. v. Bigham (Tex. Civ. App.) 138 S. W. 432; M., K. & T. Ry. Co. v. Dement (Tex. Civ. App.) 115 S. W. 635; Mars v. Panhandle & S. F. Ry. (Tex. Civ. App.) 25 S.W.(2d) 1004.

Under the ruling of our Supreme Court in T. & P. Ry. v. Prunty, 111 Tex. 162, 230 S. W. 396, distinguishing that case from H. & T. C. Ry. v. Roberts, 101 Tex. 418, 108 S. W. 808, the question propounded to plaintiff, shown in the bill of exception noted above, would not be objectionable as calling for a conclusion of law or a conclusion upon a mixed question of law and fact; nor would his answer thereto, as shown in the bill of exception, be incompetent to prove his damages, as insisted by appellant, if plaintiff has shown himself qualified from his experience and observation to express such an opinion. However he was not so qualified, and therefore the opinion so given by him was not legally competent to prove the damages awarded to him, nor the alleged negligence of the defendants; and no other testimony was introduced legally sufficient to support findings in plaintiff's favor on those issues.

We conclude further that the interest allowed by the trial court should not be construed as interest eo nomine, but as a part of plaintiff's damages, and that the same would be recoverable as such if there be a prayer therefor in plaintiff's pleadings, and if the cause of action be established by competent proof. The case cited by appellant, St. L. S. W. Ry. v. Seale & Jones, 267 S. W. 676, by the Commission of Appeals, supports this conclusion. In that case, however, it was held that interest on the amount of damages claimed could not be allowed by the court because it had not been awarded by the jury; while in the present suit the trial was before the court without a jury.

For the error indicated, the judgment of the trial court is reversed and the cause is remanded.